# EXHIBIT I

SUPERIOR COURT
STAMFORD-NORWALK
JUDICIAL DISTRICT

2021 DEC -8 P 12: 43

| | |
|---|---|
| AC 45020 | |
| FSTCV136019828S | : CONNECTICUT SUPERIOR COURT |
| SUSANNE WAHBA | : JUDICIAL DISTRICT OF STAMFORD/ |
| VS. | : NORWALK AT STAMFORD |
| JP MORGAN CHASE BANK, N.A. | : December 8, 2021 |

**MEMORANDUM OF DECISION re: MOTION TO TERMINATE STAY (#243.00)**

This action was commenced in 2013 by the plaintiff, asserting various claimed improprieties in connection with a mortgage-loan relationship between the plaintiff and the named defendant. In 2015, the defendant was granted leave to amend its pleadings (over objection of the plaintiff), so as to assert a counterclaim seeking a foreclosure of the property owned by the plaintiff.

After both the complaint and counterclaim had been tried and gone to judgment (in favor of the defendant on both the complaint and counterclaim), the plaintiff appealed. After the Appellate Court had affirmed the results of trial court proceedings and after the plaintiff had exhausted efforts to obtain review by the Connecticut Supreme Court (*Wahba v. JPMorgan Chase Bank, N.A.*, 200 Conn. App. 852, 241 A.3d 706 (2020), *cert. denied,* 336 Conn. 909, 244 A.3d 562 (2021)), the matter returned to this court. Specifically, the remand of the Appellate Court stated:

> "The appeal is dismissed with respect to the defendant's March 15, 2017 motion in limine; the judgment is affirmed and the case is remanded solely for the purpose of setting new law days." 200 Conn. App. 869.

The decision of the Appellate Court was released (officially) on October 20, 2020. The petition for certification was denied in January 2021. As noted by the plaintiff during argument on December 6, 2021, no further action took place and nothing was filed by either party until the defendant filed its application to the court,

1

seeking to have the court establish new law days, as had been directed by the Appellate Court (#236.00, filed August 13, 2021).

The plaintiff filed an objection to that motion, claiming, inter alia, that the defendant should have filed a formal motion to open judgment (complete with payment of required fee), and that the process should have included a requirement for an updated appraisal in light of the claimed change in market conditions (#237.00).

The motion duly appeared on a calendar for August 30, 2021, which was claimed for adjudication by the defendant. The court issued an order, acknowledging the objection filed by the plaintiff, but after reciting relatively boilerplate language relating to the obligation of the court in connection with a remand (*Rizzo Pool Co. v. Del Grosso*, 240 Conn. 58, 65, 689 A.2d 1097, 1102 (1997)), the court concluded that "[t]here appears to be no room for interpretation of the mandate that 'the case is remanded solely for the purpose of setting new law days,'" and therefore declined to take any action other than establishing new law days as directed. The court could not see *any* ambiguity or wiggle-room that might have given the court any latitude. (Reconsidering the value of the property and/or updating the debt could not reasonably be interpreted as <u>required</u> components of resetting the law days or even ancillary to the process.)

On September 18, 2021, the plaintiff filed a motion to reargue (#238.00), emphasizing her perception that the court has authority to do more than simply reset the law days as it had done, based on the court's equitable powers and authority. The plaintiff further alluded to the need to revisit valuation of the property due to a claimed substantial increase in the value of the property, providing a citation to an online real estate service (Zillow).

The court denied the motion to reargue:

2

> "The court quoted from *Rizzo Pools* because it provides a clear statement of the limits placed on a trial court in entering judgment pursuant to a remand. The plaintiff effectively is asking this court to revisit the merits of the judgment. That is clearly outside the mandate of "the case is remanded solely for the purpose of setting new law days."

> "(The court further notes that in her motion for reconsideration as filed with the Appellate Court, the plaintiff did not seek any expansion of the scope of remand.)"

As an aside, to the extent that the plaintiff seems to have questioned the court's reliance on *Rizzo Pool*, the court notes that similar language was used quite recently by the Appellate Court:

> "We first set forth the principles of law and the standard of review by which we evaluate this claim. In carrying out a mandate of this court, the trial court is limited to the specific direction of the mandate as interpreted in light of the opinion.... This is the guiding principle that the trial court must observe.... Compliance means that the direction is not deviated from. The trial court cannot adjudicate rights and duties not within the scope of the remand.... It is the duty of the trial court on remand to comply strictly with the mandate of the appellate court according to its true intent and meaning. No judgment other than that directed or permitted by the reviewing court may be rendered, even though it may be one that the appellate court might have directed. The trial court should examine the mandate and the opinion of the reviewing court and proceed in conformity with the views expressed therein....
> "Our remand orders, however, are not to be construed so narrowly as to prohibit a trial court from considering matters relevant to the issues upon which further proceedings are ordered that may not have been envisioned at the time of the remand .... So long as these matters are not extraneous to the issues and purposes of the remand, they may be brought into the remand hearing. Because a mandate defines the trial court's authority to proceed with the case on remand, determining the scope of a remand is akin to determining subject matter

3

jurisdiction...." (Internal quotation marks and citations, omitted.) *Jepsen v. Camassar*, 196 Conn. App. 97, 106–07, 228 A.3d 376, 382, *cert. denied,* 335 Conn. 926, 234 A.3d 980 (2020).

After the plaintiff filed her timely appeal, the defendant moved to dismiss the appeal as frivolous. That motion was denied by the Appellate Court. No analysis or explanation for the denial appears to have been provided, as far as the court can determine: "The motion of the defendant-appellee, filed October 14, 2021, to dismiss appeal, having been presented to the Court, it is hereby **ORDERED** denied."

Now before this court is the defendant's motion to terminate the automatic stay that went into effect upon the filing of the appeal. The defendant contends that the appeal has been taken solely for purposes of delay.

The plaintiff contends that there are substantive issues that need to be addressed, including her contention that the trial court should have required a formal motion to open judgment and/or should have required the defendant to provide an updated appraisal (probably accompanied by an authoritative updated statement of the debt). The plaintiff filed an objection to the motion filed by the defendant, again invoking the court's equitable authority, and citing, in addition, another case currently on appeal to the Appellate Court, including a transcribed portion of the argument before the Appellate Court in which somewhat similar issues were being considered.

As with this case, the "other" case had been remanded to the trial court, *U.S. Bank National Association v. Rago*, 189 Conn. App. 902, 203 A.3d 718 (2019), and the actions taken by the trial court on remand were being reviewed. In a sense, *Rago* was a partial mirror image (or reverse) of this case, in that in *Rago*, the mortgagee had filed an updated appraisal and updated documentation relating to the debt and the trial court had issued an order updating those figures as part of the resetting of law days as had been ordered by the Appellate Court. Furthering the mirror-

4

image/reverse quality, in *Rago*, the mortgagor is/was challenging the propriety of the trial court having addressed issues relating to updated value of the property and updated debt, particularly in the absence of any motion having been filed seeking to have the value and/or debt updated as part of a modified judgment. Still further emphasizing the related-if-opposite qualities of the cases, in *Rago*, the concern appears to have been with respect to the possible impact of revised figures on a deficiency judgment, whereas in this case, the mortgagor is claiming that the court, had it considered updated figures, might have concluded that some attention would need to be paid to whether the foreclosure should be a strict foreclosure (as ordered) or foreclosure by sale (as might be indicated by disparity between value and debt). Perhaps oversimplified, in *Rago*, the appellant's argument was that the court should have done what this court has done – simply reset the law days.

The court heard extensive argument from the parties on December 6, 2021. To the extent that the plaintiff/mortgagor had quoted a portion of argument in *Rago* in her submission, the court listened to most of that appellate argument in order to have some context for the excerpt as quoted. (The defendant/mortgagee correctly argued that argument in another case should be recognized for what it is/was – argument, and further implying that any questions by the court during the course of that argument could not be given any weight.[1])

---

[1] Further emphasizing the practical (as well as legal) need for hesitation is that this court's recollection of the argument is that during the course of argument, a judge in the course of questioning one of the parties had recited his impression of a sequence of events, which both parties subsequently indicated was not an accurate recitation. Given the impromptu nature of questioning, often for purposes of testing the extent to which a litigant will press a point, the court cannot give any significance to any specific question asked and quoted. (Indeed, it is a boilerplate element of a jury charge that a question itself is not evidence.)

The court will address the so-called *Griffin* factors, as identified by the defendant as a standard.

As something of a preliminary matter, the court starts with the language of the rule that is at the center of the current dispute. *Practice Book* § 61-11 provides, in relevant part:

> **"(d) Termination of Stay.** In all cases not governed by subsection (c), termination of a stay may be sought in accordance with subsection (e) of this rule. If the judge who tried the case is of the opinion that (1) an extension to appeal is sought, or the appeal is filed, only for delay or (2) the due administration of justice so requires, the judge may at any time, upon motion or sua sponte, order that the stay be terminated. Whether acting on a motion of a party or sua sponte, the judge shall hold a hearing prior to terminating the stay."[2]

Under this language, there is a disjunctive – termination of the stay is appropriate if the court "is of the opinion that (1) an extension to appeal is sought, or the appeal is filed, only for delay <u>or</u> (2) the due administration of justice so requires" (emphasis added). The defendant's analysis seems to blur the either-or quality of a determination that the appeal is motivated by a desire for delay and a determination that "the due administration of justice so requires" relief from the automatic stay.

It is the "the due administration of justice" language that typically is identified as invoking the so-called *Griffin* factors; see, *Griffin Hospital v. Commission on Hospitals,* 196 Conn. 451, 456-57 (1985). (In effect, then, the defendant has invoked both prongs of *Practice Book* § 61-11(d).)

---

[2] Subsection (e) provides that in a situation such as the current one, the motion is to be referred to the trial judge who heard/decided the case, who after a hearing is to issue a decision.

6

> "Whether 'due administration of justice' requires a termination of an automatic stay must involve an analysis in which the following principles are considered: (1) the likelihood of success on appeal; (2) the irreparability of injury to be suffered if the stay is lifted; (3) the effect of the stay on other parties to the proceedings; and (4) the public interest. *Griffin Hospital v. Commission on Hospitals,* 196 Conn. 451, 456-57 (1985)." *Birmingham v. Profeta*, No. LLICV186020440S, 2020 WL 8024758, at *1 (Conn. Super. Ct. Nov. 13, 2020).

(The court recognizes that it may be difficult to differentiate between an appeal filed "only" for purposes of delay and a situation properly invoking "due administration of justice," but in theory, based on the language of the rule, they appear to be distinct considerations/justifications.)

As a preliminary matter primarily relating to the first factor, the court recognizes that asking a trial court to assess these considerations, in the context of a decision that the court itself may have made at an earlier stage in the proceedings, effectively requires the court to second-guess itself, assessing the possibility if not probability that the decision rendered by the court may prove to be erroneous in the eyes of an appellate tribunal. This is especially so with respect to the first identified factor, but also may affect assessment of the other three factors, as stated in the above formulation. Nonetheless, courts can (or should be able to) identify issues that are close-calls, difficult, novel, reasonably debatable, etc., as distinguished from cases where (rightly or wrongly) there seems little room for doubt as to proper outcome. (In assessing whether to appeal and what issues to appeal, attorneys routinely undertake such analyses, however imprecise the process may be.)

With that cautionary self-referential thought in mind, the court is compelled to conclude that it is extremely unlikely that the plaintiff can prevail on the merits. It is hard to envision any language of the Appellate Court that could be more

7

unambiguous than a directive for the court to reset the law days, using the modifier "solely." Other than adding exclamation points or underlining the word "solely" – or listing all of the actions that the court is prohibited from taking (with the risk of omitting something) – the directive that "the judgment is affirmed and the case is remanded solely for the purpose of setting new law days" is inherently self-limiting. (While not necessarily controlling, it is suggestive that in *Rago*, the remand for purposes of setting new law days did not include the adverb "solely."[3])

From an alternate perspective, the plaintiff is claiming that the court should not have limited itself to setting new law days, as it had been directed to do, but in effect should have revisited the substance of the judgment itself. In contending that the court should have revisited the debt and value of the property for the purpose of making updated determinations as to either or both, in turn suggesting that that might lead the court to determine that a foreclosure by sale should be ordered instead of the existing order of strict foreclosure, the plaintiff is contending that the court should engage in almost an ab initio process, leaving only findings relating to the default on the underlying loan in place. The plaintiff argues that equity takes precedence over the language used in the rescript.

The court appreciates the plaintiff's repeated mantra that this court is supposed to do equity in connection with foreclosure actions. That obligation/responsibility, however, is not a freestanding one, devoid of context or need for procedural regularity. The plaintiff does not formulate a plausible harmonization of the directive from the Appellate Court to reset the law days ("the case is remanded solely for the purpose of setting new law days") and the contention

---

[3] Despite the absence of the word "solely," the court's recollection is that in at least one submission in *Rago*, one of the parties framed the issue in terms of a remand "solely" for resetting the law days.

that the court should also reset the debt and reset property value which in turn might require the court to vacate the judgment of strict foreclosure in favor of a foreclosure by sale. Is that to be a new mandate in all cases, that when a foreclosure appeal is unsuccessful and the matter is remanded, the trial court must always revisit property value and updated debt, or at least consider doing so?

In denying the plaintiff's motion to reargue, the court observed that "in her motion for reconsideration as filed with the Appellate Court, the plaintiff did not seek any expansion of the scope of remand" (#238.01). At a minimum, a directive to the trial court that its sole responsibility on remand was to set new law days should have put the plaintiff on notice that it was at least "plausible" (if not likely) that a court might act as the court actually did act, such that if the plaintiff believed the court should revisit other aspects of the judgment (updated debt, updated value of property, reconsideration of form of judgment), it was incumbent on the plaintiff to seek such clarification or modification. See, e.g., *Channing Real Estate, LLC v. Gates*, 326 Conn. 123, 130, 161 A.3d 1227, 1232 (2017), where a party had filed a motion seeking to adjust (narrow) the scope of a remand.

From a procedural perspective, the plaintiff provides no authority for the proposition that upon a remand such as in this case, the prevailing party is required to file a formal motion to open the judgment, complete with payment of a requisite fee. The motion filed by the defendant appears to have been intended to bring the need for action by the court to the attention of the court, facilitating compliance with the scope of the remand. (Presumably, the same result could have been achieved by filing a caseflow request, asking the court to comply with the remand.[4]) Although

---

[4] With a party's right to seek reconsideration by the Appellate Court and a right to seek certification, with no set timetable for decisions on such applications, there is no mechanism in place whereby the trial judge is notified that all avenues of subsequent review have been exhausted or waived such that it is time to act on the remand.

perhaps bordering on the trivial, it makes no sense in law or logic that having prevailed on the appeal (in all respects), the defendant was under an obligation to file a formal motion to open the judgment, and pay a fee for the privilege of doing so, in order to be able to proceed with the unchanged judgment in its favor, subject only to updated scheduling of law days.

Finally, the court noted during the course of argument that there was nothing properly in the record before the court, supporting the plaintiff's contention that property values had increased so substantially that the court, as a matter of equity, needed to revisit the disparity between value and debt on an updated basis, for purposes of considering whether the foreclosure should be changed to a foreclosure by sale. (A reference to a claimed Zillow valuation is not something that the court can entertain as competent evidence relating to value.) In a sense, the plaintiff seeks to impose upon a mortgagee, in the context of successful resistance to an appeal of a foreclosure, a heads-I-win-tails-you-lose framework. In *Rago*, where the mortgagee had submitted an updated appraisal and updated information as to the debt, the mortgagor appealed based on a perception that the updated values might prejudice the mortgagor with respect to a possible deficiency judgment. The net effect of the position of the plaintiff here (including reliance on *Rago*) is that presenting such information to the court is an obligation of a mortgagee on remand, even if the remand is (solely) for resetting law days, but it might only be usable if it inures to the benefit of the mortgagor.

For numerous if related reasons, the court cannot conclude that there is a reasonable likelihood that the plaintiff can prevail on her challenge to the court's interpretation of the scope of remand.

The defendant addressed the issue of irreparable harm albeit in a less than satisfactory manner; the plaintiff did not address it in her submission in explicit terms.

The defendant contends that irreparable harm is being inflicted by virtue of delay, with a claimed increasing disparity between value and debt, seemingly not considering whether the value of the property has increased over time. The lack of competence of the plaintiff's reference to Zillow does not equate to a foundation for an assumption that the property value has remained constant.

The plaintiff contends that there has been a substantial increase in value, if not grounded in any competent evidence, such that there is an increase in net equity, but the plaintiff did not explain how that fits into a framework relating to irreparable harm. Such a disparity would seem to minimize if not preclude any possibility of a deficiency judgment. If the plaintiff is looking at a lost opportunity to benefit from the increasing equity in the property, there is both a speculative and practical perspective that has not been addressed. If the court were to treat the remand as almost an invitation to plenary review, and consider a foreclosure by sale, there would be the somewhat speculative question relating to the likely disparity between an auction price and value. Even if the court were to accept the plaintiff's figures, her estimate of the current debt is more than 75 percent of her estimate as to current fair market value. What is the likelihood of a bid substantially in excess of the debt, particularly taking into account transactional costs associated with the sale?

Conversely, if there is some $2 million in equity as claimed, the plaintiff could redeem the property by paying the debt, e.g., via a reverse mortgage, and obtain full benefit from that surplus equity without having any issues relating to a bidding process and the uncertainty of outcome.

Most importantly, the plaintiff has provided no input as to how or why one avenue would be demonstrably superior to another (in an irreparable harm sense). To the extent that a deficiency judgment proceeding after a strict foreclosure would look to the current value of the property as a benchmark, *Webster Bank, N.A. v.*

11

*Frasca*, 183 Conn. App. 249, 258, 192 A.3d 467, 477 (2018), there is no need for an interim evaluation and an increase in value as claimed by the plaintiff would preclude any disparity such as claimed by the defendant. (That topic was raised during argument in *Rago*.)

To put it differently: there has been a final determination that the plaintiff has defaulted on her obligations and therefore has no reasonable expectation as to keeping the property – unless she redeems the property which is not a function of current value. The primary outstanding issue relates to when title will be transferred, and under plaintiff's own approach, there might be a secondary issue as to mechanism. The plaintiff has not identified any material irreparable harm, one that is implicated by the current state of this case.

From an alternate perspective, if there were any irreparable harm, it would largely if not exclusively be attributable to the plaintiff. She did not seek to have the Appellate Court broaden the scope of remand. She did not file a motion to open the judgment, instead arguing that the defendant should have done so (effectively for her benefit). If there is as much equity as she claims, she does not appear to have taken any steps to preserve or obtain the benefit of such equity, such as by attempting to redeem the property. She did not present the court with any competent evidence relating to her claim of a significant increase in the value of the subject premises.[5]

---

[5] To the extent that the plaintiff may have alluded during argument to a timing constraint as justifying her reliance on a Zillow valuation of her property, the court notes that the Zillow valuation was mentioned in her motion to reargue filed on September 17, 2021 (#238.00), two full months prior to her filing of her objection to the motion to terminate the appellate stay (#242.00) and approximately eleven weeks prior to argument on that latter motion. (The claim of a steep rise in the value of the property was asserted in the objection to the defendant's motion seeking to have the court set new law days (#237.00), filed on August 26, 2021, such that the plaintiff had identified the issue more than three months prior to argument on the

On the record before the court, there does not appear to be a significant issue relating to irreparable harm, especially which materially points in either direction.

The third *Griffin* factor, the effect of the stay on other parties, does not seem to be a major issue, as the primary effect is on the plaintiff and defendant. To the extent that the plaintiff's husband is an occupant of the premises, the only advantage is the delay in eventual transfer of title, whether by strict foreclosure or by sale (absent redemption by the plaintiff). There do not appear to be any legal rights of other parties of any significant concern, or at least none have been identified. Again, although the defendant alluded to these equitable factors if not by explicit reference to *Griffin*, the plaintiff has not attempted to provide a counter-perspective. The plaintiff's husband, as an occupant of the premises, presumably would benefit from any delay in eventual transfer of title, but that would simply accentuate the importance of delay as a factor or motivation.

The final *Griffin* factor is public interest. While the plaintiff implicitly relies on the importance of equity, the court cannot adopt an equity-trumps-everything-else approach. Finality of legal proceedings is an important consideration and cases that drag on for years and years without any closure do not instill confidence in the judicial system. Orderliness of procedures also is important.

There also is concern about the plaintiff's attempt to shift an implicit burden of action to the defendant, the prevailing party on the appeal, to take certain steps that do not appear to be required and can only advantage the plaintiff. Instead of trying to present a plausible argument as to why the judgment should be opened, as would be required in support of a plaintiff-filed motion to open the judgment, the plaintiff seeks

---

motion to terminate the appellate stay.) There would appear to have been sufficient time to obtain and present competent evidence as to value, assuming it to be as critical as claimed.

to impose such a burden on the defendant, a party with no motivation other than doing the minimum necessary to effectuate the judgment that already has been vindicated by the Appellate Court, with only new dates (a timetable) needed.

There also is a societal value in having property owned and/or occupied by individuals with an economic interest in maintaining the property. There is little incentive to an owner, facing foreclosure and loss of the property, to maintain (much less improve) the property beyond the bare minimum (if that). Neglect of a property expected to be lost to foreclosure can have an adverse impact on neighboring properties, both in terms of value and quality of life.

Somewhat more narrowly, the public interest in the judicial system is not furthered when even seemingly unambiguous directives such as the one at issue in this case become the subject of protracted litigation. Recognizing that exigent circumstances might require an occasional exception, how is public confidence in the judicial system enhanced when, reminiscent of then-President Bill Clinton and "It depends on what the meaning of the word 'is' is," a directive "solely" relating to scheduling is claimed to be functionally indistinguishable from "reconsider everything"?

Arguably somewhat related, the plaintiff noted that the Appellate Court denied the defendant's motion to dismiss, which motion claimed that the appeal is frivolous, with the plaintiff further arguing that that denial would be inconsistent with a granting of the motion to terminate stay currently before this court. In particular, the denial of the earlier motion is claimed to mean that the Appellate Court believed the appeal to have some potential merit (in the sense of worthy of pursuit) whereas a granting of the motion to terminate stay would effectively be a death knell for the appeal. As noted earlier, there was no reason given for the denial of the motion to dismiss.

The court can envision a variety of reasons for such a denial, but the court cannot ascribe any particular significance to the denial under these circumstances, particularly as may pertain to possible merits.[6] Each motion must be evaluated according to the appropriate standard by an appropriate decision-maker. This court is required to decide the motion before it based on standards it is required to utilize.

Public interest considerations, then, favor terminating the stay.

In sum, there is little to no reason, based on *Griffin* factors, not to grant the motion, and significant reasons to grant the motion. Most determinative is the unlikelihood of success; given Appellate Court decisions directing trial courts not to exceed the scope of a remand, and the use of the seemingly unambiguous term "solely," the court cannot see a reasonable possibility much less probability that the Appellate Court will interpret its use of "solely" as meaning something other than exclusively or only or some other narrowly-constraining definition. This court must ascribe some level of intent to the inclusion of such a limiting term.

During argument, the plaintiff noted that should the court grant this motion, there would be a likely motion for review, which would entail further delay in ultimate resolution of this matter. (In *Rago*, a motion for review led to reversal of a trial court decision to terminate the automatic stay.) As a trial court, this court is always aware

---

[6] There may well be non-substantive reasons for such a denial. To the extent that the Supreme Court has expressed interest in the process by which some appeals are dismissed by the Appellate Court as frivolous, the Appellate Court may have, in an institutional sense, become more hesitant to grant such motions. See, e.g., *Thornton v. Jacobs*, 334 Conn. 929, 224 A.3d 538 (2020), granting certification as to question: "Did the Appellate Court properly dismiss, as frivolous, the appeal of a nonparty witness from the trial court's order enforcing a subpoena for an out-of-state lawsuit?" (See, *Thornton v. Jacobs*, 339 Conn. 495 (2021), for eventual disposition after issue had become moot.)

(if often subconsciously) that anything it does is potentially subject to review by an appellate tribunal. That should not deter this court from entering the order it deems proper (or, as in the case of the court's response to the remand, required). Ultimately the Appellate Court will decide whether its remand "solely" for the purpose of resetting law days intended generally literal compliance (this court's understanding) or was intended to allow a far broader scope of action (as claimed by the plaintiff). This court saw little to no room for discretion in the term "solely" – the Appellate Court can make its own determination of what it meant, how and when it chooses.

This case is far cleaner/clearer than *Rago*, where the appellant has raised questions as to whether procedurally and/or substantively the court acted improperly in doing more than simply resetting the law days, without a formal motion seeking such expansive action. As directed, this court "solely" reset the law days.

The motion to terminate stay is granted.

POVODATOR, JTR.